JANVIER, Judge.
Herman Bergeron, a stevedore laborer employed by Standard Stevedoring Co., Inc., sustained physical injury on October 19, 1956, when a bale of cotton fell on his right foot fracturing the fifth metatarsal bone which is the bone which, according to the doctors, “articulates with the little toe.”
He was paid compensation at the rate of $35 per week until he had received a total of $490. Medical expenses amounting to $204.25 were also paid. On advice of medical experts, compensation was then discontinued, the doctors feeling that he had entirely recovered and was able to return to his former employment. He then brought this suit against the employer, Standard Stevedoring Co., Inc., and its insurer, The Travelers Insurance Company, alleging that he had been totally and permanently disabled, and praying for an award in compensation at the rate of $35 per week for 400 weeks subject to credit for the amount already paid. He also prayed for an award of $2,500 to cover past and future medical expenses and for an attorney fee of $1,000 “under the general insurance law”; for 12% penalties on the total amount of the award, and an additional attorney’s fee at the rate of 20%.
He brought suit in forma pauperis making oath to the effect that he was unable to pay the costs as they should accrue.
The defendant admitted the occurrence of the accident and that plaintiff had been temporarily disabled, but denied that the disability was permanent and asserted that plaintiff could return to his former employment and that, in fact, he did so return.
There was judgment in favor of plaintiff for $35 a week for a period not in excess of 300 weeks subject to credit for the amount already paid in compensation and the amount paid in medical expenses. The judgment also taxed as costs the fees of two medical experts which were fixed at $75 each. From this judgment defendants have appealed suspensively.
Plaintiff has answered the appeal praying that the judgment be amended and that the period during which compensation should be paid should be not in excess of 400 weeks, and that penalties and attorney’s fees should be awarded and that further damages should be assessed against the defendants for the taking of a frivolous appeal.
Shortly before the matter came up for hearing before us defendants filed in this Court a motion praying that we remand the matter to the Civil District Court for *304 the Parish of Orleans in order that there might be submitted in that Court evidence tending to show that, sinóe the rendition of the judgment, plaintiff has been working regularly in identically the same kind of labor in which he was engaged before the accident and that his earnings have been at least as great as they were before he sustained the injury. In his answer to the appeal plaintiff prayed that the motion to remand be dismissed.
When the matter came before us, counsel for defendants argued that the record as already made up amply justified the dismissal of the suit on the ground that plaintiff not only could return to his former employment, but that he had worked regularly at that employment ever since his discharge by the physicians as able to return to work and that in fact he had worked regularly at that employment up to the time of the argument before us. Counsel also asked that we view certain moving pictures, some of which had been offered in evidence when the case was tried in the Civil District Court and others of which were offered in connection wth the motion to remand.
When we come to consider the record as it was made up for submission in the District Court, we cannot refrain from stating that that record leaves us in extreme doubt as to the verity of plaintiff’s claim.
There is the usual contradictory medical evidence. Those experts who treated the plaintiff and who testified for defendant were strongly of the opinion that he had entirely recovered from the effects of the fracture of the metatarsal bone of the little toe and that the swelling, which formed no part of his original complaint but which he now points to as causing the disability, had no relationship whatever to the original injury.
On the other hand, doctors placed on the stand on behalf of plaintiff are equally certain that the swelling of the ankle is the direct result of the original injury and that, as a result of the condition which causes that swelling, plaintiff will never be able to work regularly at his former extremely laborious occupation except possibly with excruciating pain at times. It may be stated here that when the suit was filed it was the contention of plaintiff that he was unable to work at all, and that, during the course of the trial, when it became obvious that there was evidence to show that he had regularly worked at his former employment, he then changed his contention and maintained that, though he would work, he could do so only by submitting to extreme pain in the right ankle, and at this point it is also well to state that, although it is obvious that on the day of the trial below his right ankle was seriously swollen, the left ankle was swollen to a lesser extent. Counsel for paintiff insists that it is absurd to state that the swelling of the right ankle was not the direct result of the original injury, maintaining that if so large and heavy an object as a bale of cotton should fall on a human foot, it would certainly cause more injury than the simple fracture of a small bone of one toe. It is probably true that if such an object should fall squarely upon the entire foot or ankle it would cause more than a simple fracture of one bone on the extreme edge of the foot, but it may be that the bale by chance did not fall on the entire foot but struck only the extreme outer edge of the right foot breaking only the small bone which operates the little toe.
The doctors who testified on behalf of the defendants were certain that the swelling of the ankle was not the result of the fracture of the small bone which had completely knitted and, according to all the doctors, was in perfect alignment and position. Dr. Menendez, when asked whether the swelling of the ankle could have been caused by the accident, stated that he could not say what caused the swelling, but he said: “ * * * I do know it’s not the result of that accident * * Dr. Soboloff was of the same opinion.
That plaintiff was able to work and to do the same extremely heavy labor which he *305 performed previously is not denied, but counsel argues that if he works for any considerable period the ankle begins to swell and that this causes so much pain that he is forced to discontinue work until the swelling dissipates. Strangely enough, however, he at no time made complaint to any one in authority about this condition. As a matter of fact, when counsel for defendant offered to call a foreman under whom the plaintiff had worked to testify that no such complaint had ever been made, counsel for plaintiff stated: “We are perfectly willing to stipulate that my man has never complained to any foreman.” According to counsel for plaintiff, he did complain to various fellow-employees, and, according to the testimony of some of these fellow-employees, they knew that he was suffering and helped him in his work. However, one of these witnesses, who at one part of his testimony stated that he knew that Bergeron was suffering from the swollen ankle, said that he knew it because “I have seen the man around home many times when he got off of work,” and yet in another part of his testimony he said: “I have never gone to- his home, no more than sometimes to tell him to come out to work.” Another fellow-employee, who testified that often while working with Bergeron, Bergeron had complained of pain, proved by his own statements that he had never worked with Bergeron at the times referred to in his testimony.
The work records which are in evidence convince us that the truth is that during at least the past two years plaintiff has worked as regularly as he did before the accident and has earned at least as much. It is true that in some weeks he has earned very small amounts while in others his earnings have been remarkably large. It is explained, however, that this results from the fact that work on the riverfront in the loading and unloading of vessels is spasmodic or intermittent and that, on some occasions when there is a good deal of work, such a laborer may often earn as much as $200 in one week and sometimes even more, while in other weeks he may earn only $20, $30, or $40. This is a condition which has always existed, and a study of the work record of plaintiff before the accident in comparison with his work record afterwards illustrates this very accurately.
There are work records offered in evidence which show that before the accident his average weekly earnings for one period was $70.26 per week, for another period it was $53.60 per week, and for another it was $12.40 per week. The work records of 1957 and for the part of 1958 from January 1 to the time of the trial showed about these same averages and the work record for 1958 shows that, with the exception of three weeks in March, he worked every week from the first of the year until June 3rd, the trial being held on June 18th, and that his average weekly earnings for that part of 1958 were for one period of several weeks $89.77, and for another period $83.97 per week.
Gilbert L’Hote, who was an acting superintendent for a stevedoring company for which Bergeron worked, stated that during 1958 he had missed no days from work; that he had occasion to see Bergeron every day at least four or five times.
Our conclusion is that the original record leaves so much doubt on the question of whether plaintiff is disabled to any extent as a result of the original accident that we cannot refrain from feeling that the ends of justice will best be served by remanding the matter in order that such evidence as may be available to the defendant or the plaintiff may be introduced, and that the district court, on such record as may then be presented, may determine whether the plaintiff has been disabled as the direct or indirect result of the accident which caused at least temporary disability. We feel that we are authorized to order such a remand. Soudelier v. Travelers Ins. Co., La.App., 72 So.2d 771; McClung v. Delta Shipbuilding Co., La.App., 33 So.2d 438; Morales v. Burns, La.App.; 21 So.2d 893; Vilce v. Travelers Ins. Co., La.App., *306 18 So.2d 243; 19 Tulane Law Review, page 305; Code of Practice, Article 906.
While in most of the cases it is stated that such remand should be ordered where there is evidence which is important and which could not with due diligence have been obtained before, there are others which hold that such remand may be ordered where necessary to “subserve the ends of justice.” Schneider v. Etna Life Insurance Co., 30 La.Ann. 1198; Keller v. Keller, 4 Orleans App. 309; Mayer v. Barrow, 182 La. 983, 162 So. 748.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and it is now ordered that the matter be remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and consistent with the views herein expressed.
Reversed and remanded.